**1IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL ACTION NO. 1:25-CV-00257-KDB**

| | |
|---|---|
| **CHRISTI WARLICK,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**FRANK BISIGNANO, COMMISSIONER OF SOCIAL SECURITY,**<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff Christi Warlick's appeal of an unfavorable administrative decision denying her application for a period of disability and disability insurance benefits under the Social Security Act. Doc. No. 2-2 ("Tr.") at 20. Having reviewed and considered the parties' briefs, the administrative record, and applicable authority, the Court finds this matter should be remanded to allow the ALJ to fully address all the material circumstances of her alleged disability, including the frequency with which she is likely to be absent from or unable to work because of migraine headaches or to use the bathroom as a result of her gastrointestinal problems. Accordingly, the Court will **REVERSE** the Commissioner's decision, and **REMAND** this matter for further proceedings consistent with this Order.

## I. PROCEDURAL BACKGROUND

On April 6, 2022, Christi Warlick applied for disability insurance benefits under Title II of the Social Security Act, alleging (after an amendment) that she had been disabled since April 17, 2018. Tr. at 20. Warlick's claim was denied initially and upon reconsideration. *Id.* She then requested a hearing before an Administrative Law Judge ("ALJ"), where she was represented by

counsel. *Id.* After conducting the hearing, ALJ Benjamin Burton denied Warlick's application in a decision dated November 21, 2024. *Id.* at 37. The Appeals Council denied Warlick's request for review; thus, the ALJ's determination stands as the final decision of the Commissioner. Warlick now timely seeks judicial review under 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process ("SEP") established by the Social Security Administration ("SSA") to determine whether Warlick was disabled under the law during the relevant period.[1] At step one, the ALJ found that Warlick was not currently engaged in substantial gainful activity and had not done so from the amended alleged onset date of April 17, 2018, through the last date insured of December 31, 2023. *Id.* at 22 (citing 20 C.F.R. §§ 404.1571, et seq.). At step two the ALJ determined that Warlick had the following severe impairments: "migraines, chronic gastritis, digestive impairment, osteoarthritis of bilateral knees, bursitis of bilateral hips, obesity, bilateral carpal tunnel syndrome, depressive disorder, anxiety disorder, attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c))." *Id.* At step three, the ALJ found that none of Warlick's impairments, nor any combination thereof, met, or equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). *Id.* at 24.

[1] The required five-step sequential evaluation required the ALJ to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but under step five the Commissioner must prove the claimant can perform other work in the national economy despite her limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

Before proceeding to step four, the ALJ determined that Warlick had the following residual functional capacity ("RFC"):

> to perform medium work as defined in 20 CFR 404.1567(c) except frequent postural activities, frequent handling and fingering, no more than a moderate noise environment, would need to avoid concentrated exposure to pulmonary irritants, can maintain concentration, persistence, and pace for 2-hour blocks of time on simple and detailed tasks but not complex tasks and any changes in work setting would need to be infrequent (i.e., less than occasional).

*Id.* at 26-27.

At step four, the ALJ found that Warlick was unable to perform her past relevant work as an Administrative Assistant. *Id.* at 35. Finally, at step five, the ALJ concluded that there were other jobs in significant numbers in the national economy that Warlick could perform based on her age, education, work experience, and RFC. *Id.* These jobs included Laundry Worker, Inspector and Machine Tender. *Id.* at 36. Thus, the ALJ found that Warlick was not disabled under the Social Security Act from April 17, 2018, the amended alleged onset date, through December 31, 2023, the date last insured (20 CFR 404.1520(g)). *Id.*

## III. LEGAL STANDARD

The legal standard for this Court's review of social security benefit determinations is well established. *See Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 604–05 (4th Cir. 2025); *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). "The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability. To determine whether an applicant is entitled to benefits, the agency may hold an informal hearing examining (among other things) the kind and number of jobs available for someone with the applicant's disability and other characteristics. The agency's factual findings on that score are 'conclusive' in judicial review of the benefits decision so long as they are supported by 'substantial evidence.'" *Biestek v. Berryhill*, 587 U.S. 97, 98-99 (2019) (quoting 42 U.S.C. § 405(g)).

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations." *Id.* at 102 (citation modified). "[T]he threshold for such evidentiary sufficiency is not high. Substantial evidence ... is more than a mere scintilla.[2] It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103 (citation modified). "This isn't a high threshold." *Drumgold*, 144 F.4th at 604. Accordingly, this Court does not review a final decision of the Commissioner de novo*, Metcalf v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), and must affirm the Social Security Administration's disability determination "when [the] ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." *Drumgold*, 144 F.4th at 604; *see also Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ].").

Thus, this Court may not weigh the evidence again, nor substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. "In reviewing for substantial evidence" in support of an ALJ's factual findings, "[the reviewing court] do[es] not undertake to reweigh conflicting

[2] As the Fourth Circuit has noted, "[s]tandards are easy to recite, but harder to apply. Part of that difficulty ... lies with confusing terminology like 'a scintilla of evidence.' After all, what in the world is a 'scintilla?' ... [D]ating back to the nineteenth century, courts have struggled with the 'distinction between what is a scintilla' and what is not." *Boing v. Raleigh & G.R. Co.*, 87 N.C. 360 (N.C. 1882) (remarking that the distinction "is so narrow that it is often very difficult for a court to decide upon which side of the line evidence falls"). Recognizing this difficulty, former South Carolina Supreme Court Justice John C. Few once remarked, in jest, that "scintilla is Latin for 'whatever a judge wants it to mean.' ... To overcome the vagaries inherent in the term 'scintilla,' courts should not only recite our well-settled standards ... but also actively engage with the [relevant underlying evidence] in analyzing the arguments of the parties." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756 (4th Cir. 2021).

evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation modified). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the court defers to the ALJ's decision. *Id.*; *Shinaberry*, 952 F.3d at 123. This is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). However, notwithstanding this limited standard of review of the Commissioner's factual determinations, the Court must always ensure that proper legal standards are being followed. *Long v. Kijakazi,* No. 1:22-CV-00091-KDB, 2022 WL 18026331, at *2-3 (W.D.N.C. Dec. 30, 2022).

## IV. DISCUSSION

Plaintiff raises two broad issues in her appeal. First, she argues that the ALJ erred in failing to find that Warlick's migraine headaches met a "listing" pursuant to SSR 19-4p and failed to account for all the limitations caused by her migraines in the RFC. Second, she claims that the ALJ failed to properly account for the limitations causes by Warlick's chronic gastritis and digestive impairments.

### A. Migraine Headaches

In his decision the ALJ summarized the history and frequency of Warlick's migraines, writing:

> The claimant began reporting migraine headaches before onset of the relevant period. See (6F/23). She has consistently described her pain, symptoms, and triggers of weather, scents, chemicals, and stress. She has failed many conservative treatments, including muscle relaxers (Tizanidine, Methocarbamol), pain management (Tramadol, Prednisone), relaxation exercises, triptans (Sumatriptan, Rizatriptan, Frovatriptan, Naratriptan), seizure medications (Gabapentin, Topamax, Trokendi XR), Topamax and tricyclic antidepressants (nortriptyline); these provided no more than short term and incomplete relief. However, she did report initial success with SPG block and trigger point injections.

> She reported variable frequency and intensity of her headaches as they responded to treatment. (6F/4-5).
>
> …
>
> The claimant received her first Botox injections in April 2020; by October 2020, she reported that she was no longer in constant pain, needed abortive treatment only 20 days per month, and experienced severe headaches 3-5 days per month. (5F/17-30). In January 2021, she reported headaches only 10-12 days per month (5F/15). She continued with regular injections, reporting intermittent symptom improvement and worsening with medication adjustments and life stressors. She did not require emergency treatment or hospitalization. (5F). There was a substantial break in Botox treatment from March 2022 – August 2024. When she returned in August 2024, she reported a stable headache pattern with constant pain at 5/10 and more severe pain 3-4 days a week and 1-2 days a week where she did not need to take an abortive. (35F/6). With the combination of injectables and Nurtec, her pain was still chronic but "more manageable." (35F/2).

Tr. 29-30. He then concluded, "[b]ased on the foregoing, the undersigned finds a residual functional capacity for exposure to no more than moderate noise and in avoiding concentrated exposure to pulmonary irritants." Tr. 30.

Warlick contends that this history satisfies the requirements for a "listing" for migraines under the applicable regulation,[3] SSR 19-4p, and that the ALJ failed to adequately explain why the limitations included in the RFC sufficiently accounted for her headaches. Because the Court concludes that the RFC may not adequately reflect the full scope of the impact of Warlick's headaches on her ability to work, the Court need not and does not reach the question of whether

[3] There are no listing criteria for headaches. However, the Commissioner may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing. Epilepsy (listing 11.02) is used as the most closely analogous listed impairment for an Medically Determinable Impairment ("MDI") of a primary headache disorder. The ALJ explained, "while uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures), and we may find that his or her MDI(s) medically equals the listing." Tr. 24.

those headaches meet the "listing" criteria, an issue which the ALJ should again carefully consider on remand.

Most significantly, the Court agrees with Warlick that the ALJ erred by not making specific findings regarding how often she would be absent from work due to the frequency and severity of her headaches. As described above, even after a long history of treatment, Warlick's headaches ranged from 3-5 days of severe headaches a month to "severe pain 3-4 days a week." The number of days with headaches (10 – 20 a month) is even higher. And, the record establishes the significant impact that severe migraine headaches have on Warlick, which appear to preclude work. *See* Tr. 550 (office notes of her treating neurologist stating that her migraines caused photophobia, phonophobia, nausea/vomiting, body ache, flu-like symptoms, brain fog, weakness, and wordfinding difficulty); Tr. 56-57, 420 (Testimony of Warlick and her son that she must avoid "bright lights and sounds" or be "confined to a bed-ridden dark room" when she had a migraine).

Indeed, the number of work absences a month may be determinative of Warlick's employment prospects. The Vocational Expert testified that if a hypothetical person were absent from work three or more days per month, there would be no work. Tr. 80. So, it is necessary for the ALJ to make specific factual findings as to whether her headaches were severe enough to cause her to be absent from work and how often that occurred, findings the ALJ did not make here. As summarized by the Fourth Circuit in *Woody v. Kijakazi*,[4] the "ALJ's failure to reach an 'express

---

[4] While *Woody* is an unpublished decision and is not being considered as binding precedent, the Court finds its reasoning persuasive and in accord with other authority. *See Payne v. Comm'r SSA*, Civil No. SAG -14-1015, 2015 U.S. Dist. LEXIS 10096, at *1 (D. Md. Jan. 29, 2015) ("it is unclear from the record how [plaintiff] would be able to sustain employment, without having excessive absenteeism that would likely result in [her] termination"; *Howard V. Kijakazi*, Civil Action No. 4:21-cv02378-TER, 2022 U.S. Dist. LEXIS 147029, at *16 (D.S.C. Aug. 16, 2022) ("The ALJ's opinion is lacking in explanation of the impact of Plaintiff's migraine headaches, especially as to frequency, on Plaintiff's ability to sustain work activity on a regular and continuing basis.").

conclusion in the first instance' on the potentially dispositive issue of whether the frequency and severity of [Warlick's] headaches would cause her to be absent from work more than [the number of permissible absences]—or to explain how, despite any potential absences, the evidence supported his finding that the limitations included in the RFC sufficiently accounted for [Warlick's]—is an error of law that necessitates remand." No. 22-1437, 2023 WL 5745359, at *1 (4th Cir. Sept. 6, 2023). Therefore, the Court will remand this matter for further factual findings on whether, given the frequency and severity of Warlick's headaches, she would be able to sustain employment, without excessive absenteeism.

### B. Gastrointestinal Issues

Warlick's second contention on appeal is that the ALJ failed to properly account for the limitations causes by Warlick's chronic gastritis and digestive impairments. Specifically, she argues that the ALJ should have included her frequent need to go to the bathroom (and the resulting time off task) in the RFC. Because the Court has determined that a remand—on all issues—is required for the reasons discussed above, it need not further rule on this separate ground for appeal. However, the Court notes that the Fourth Circuit has addressed the importance of ALJs taking into account the practical limitations of gastrointestinal diseases and symptoms, including the need to use the bathroom, in crafting an appropriate RFC. *See Dowling v. Comm'r of Soc. Sec.*, 986 F.3d 377, 384 (4th Cir. 2021) ("Obviously, the need to visit the bathroom many times throughout the day impacts one's ability to work. And yet, the ALJ did not analyze Appellant's need for regular bathroom breaks. … On remand, the ALJ should evaluate the frequency at which Appellant needed to use the bathroom and analyze how that restriction impacted her ability to work."). Thus, on remand, the ALJ should consider how often Warlick needed to use the bathroom and how those needs limited her ability to work and capture that analysis in the RFC.

## V. ORDER

**NOW THEREFORE IT IS ORDERED** that the Commissioner's decision is **REVERSED**. This matter is **REMANDED** for a new hearing pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED ADJUDGED AND DECREED**.

Signed: September 17, 2026

Kenneth D. Bell
United States District Judge